*Formatted for Electronic Distribution*                                                              *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

**In re:**

       **ROME FAMILY CORPORATION,**           Chapter 7 Case
               Debtor.                                 # 02-11771

_____

       **BANKNORTH, N.A.**
               Plaintiff,

         v.

       **BERNARD ROME,**                         Adversary Proceeding
               Defendant.                     # 04-1048

       **BERNARD ROME, NARRIC ROME, and**
       **MALLORY ROME**
               Counter-Plaintiffs,

         v.

       **BANKNORTH, N.A.**
               Counter-Defendant.

_____

*Appearances:*    S. Stacy Chapman, III, Esq.         Jerome F. O'Neill, Esq.
                          Webber, Chapman & Kupferer, Ltd.    O'Neill Kellner & Green, PC
                          Rutland, Vt.                                Burlington, Vt.
                          *For the Plaintiff/Counter-Defendant*    *For the Defendant/Counter-Plaintiffs*

Filed & Entered
On Docket
05/05/06

### MEMORANDUM OF DECISION
### GRANTING BANKNORTH, N.A.'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff/ Counter-Defendant Banknorth, N.A. ("Banknorth") originally initiated the instant adversary proceeding to collect on the personal guaranties of Bernard Rome (the "Defendant") executed in connection with various loans made by Banknorth to the Rome Family Corporation (the "Debtor"), of which the Defendant is the primary shareholder. The Defendant asserted various counterclaims against Banknorth, asserting that Banknorth improperly refused to release certain reserve funds to him personally. The counterclaims have since been amended to also include asserted injuries of the Defendant's children, Narric Rome and Mallory Rome, as shareholders of the Debtor (the "Second Amended Counterclaim"). For ease of reference, the Defendant, Narric Rome and Mallory Rome will be referred to herein as the "Counter-Plaintiffs." The matter is set for a jury trial, to commence on May 22, 2006. Banknorth has moved for summary judgment on the Second Amended Counterclaim asserting that: (1) the Defendant is estopped from asserting his individual counterclaims regarding the reserve account since the Defendant has entered into a stipulation acknowledging that the reserve account is property of the Debtor; and (2) the asserted injuries to the Debtor's shareholders are derivative in nature and thus, the Counter-Plaintiffs do

not have standing to pursue any portion of the Second Amended Counterclaim. Neither the Defendant nor the Counter-Plaintiffs have filed a response to Banknorth's motion for summary judgment.

For the reasons set forth below, the Court grants Banknorth's motion for summary judgment.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding and the pending motion for summary judgment under 28 U.S.C. § 157(b)(2)(A).

## LEGAL ISSUE PRESENTED

The legal issue presented is whether under Vermont law the asserted causes of action in the Second Amended Counterclaim are individual to the Counter-Plaintiffs or derivative in nature.

## BACKGROUND FACTS

The material facts are not in dispute.[1] Over the course of the lending relationship between Banknorth and the Debtor, Banknorth required and the Defendant executed personal guaranties securing the Debtor's debt. In addition to the personal guaranties of the Defendant, for additional security for the loans, the Debtor established a reserve account with Banknorth, which Banknorth held in the Debtor's name (the "Reserve Account"). The Reserve Account ultimately had a balance of $750,000. If certain conditions were met, including the Debtor obtaining a certain debt-service coverage ratio, the funds in the Reserve Account could be released to the Debtor. On or about September 12, 2002, Banknorth released $271,325.25 from the Reserve Account to the Debtor. The Debtor did not list a claim against Banknorth on its Schedule B. The Debtor listed the Reserve Account as an asset on its bankruptcy schedules and the Defendant has recognized in two separate stipulations (one in a parallel adversary proceeding and one in the instant proceeding) that the Reserve Account funds belong to the Debtor.[2] It is undisputed that the funds in the Reserve Account are the property of the Debtor.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the

---

[1] Since the Counter-Plaintiffs did not file a response to Banknorth's Statement of Undisputed Facts, the facts set forth therein are deemed admitted pursuant to Vt. L.B.R. 7056-1(a)(2).

[2] In the Stipulation of Settlement filed in Adversary Proceeding 04-1065, the Defendant agreed that the $271,325.25 paid by the Debtor to the Defendant from the reserve account constitutes a preference "as that term is defined in the Bankruptcy Code." Ex. F, ¶1. Although "preference" is not directly defined in the Code, the Code makes clear that a transfer of an interest of the debtor in property is preferential in certain circumstances. 11 U.S.C. § 547. By agreeing that the transfer constituted a preference, the Defendant has admitted that the funds belonged to the Debtor. In the December 17, 2004 Stipulation filed in the instant adversary proceeding, the Defendant stipulated that the reserve account was property "belonging to the Rome Family Corporation as a matter of law as of the date of the bankruptcy filing by Rome Family Corporation." Ex. G, ¶1.

governing law will properly preclude the entry of summary judgment. See <u>Anderson</u>, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See <u>id</u>. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See <u>Cruden v. Bank of New York</u>, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See <u>Anderson</u>, 477 U.S. at 249; <u>see also</u> <u>Palmieri v. Lynch</u>, 392 F.3d 73, 82 (2d Cir. 2004); <u>Delaware & Hudson Ry. Co. v. Conrail</u>, 902 F.2d 174, 178 (2d Cir. 1990), <u>cert. denied</u>, 500 U.S. 928 (1991).

## DISCUSSION

The Defendant alleges Banknorth has committed a panoply of wrongs, all of which flow from Banknorth's refusal to turn over the entire balance of the Reserve Account to the Defendant. In particular, the Defendant accuses Banknorth of breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, fraud, negligent misrepresentation, and conversion. Banknorth asserts that the Defendant is estopped, for example, under the principles of *res judicata,* from pursuing the asserted counterclaims because the Defendant has recognized that the Reserve Account belongs to the Debtor. The Court need not determine whether *res judicata* applies under these circumstances. Based upon the record before it, the Court finds that the Defendant has no standing to assert an individual cause of action against Banknorth for any alleged wrongdoing in connection with the Reserve Account. Even if the Defendant had standing, the Court is reluctant to set aside the stipulated facts under the law of the case doctrine. <u>Doctor's Assocs., Inc. v. Distajo</u>, 107 F.3d 126, 131 (2d Cir.), <u>cert denied</u>, 522 U.S. 948 (1997).

Banknorth moves for summary judgment on the premise that the Counter-Plaintiffs lack standing to sue individually because their claims are derivative in nature. The allegations asserted by the Counter-Plaintiffs in the Second Amended Counterclaim arise solely from their status as shareholders of the Debtor. None of the damages alleged are unique to the Counter-Plaintiffs or their particular class of stockholders.

Whether a claim belongs to the Debtor's estate or to its individual shareholders is a matter to be determined by state law. <u>In re Van Dresser Corp.</u>, 128 F.3d 945, 947 (6th Cir. 1997). Under Vermont law, the general principles governing shareholder suits are well settled. <u>Bovee v. Lyndonville Sav. Bank & Trust</u>, 174 Vt. 507, 508, 811 A.2d 143, 145 (2002). In a derivative suit, the shareholder sues on behalf of the corporation for harm done to the corporation; in a direct action, the shareholder brings suit individually, or on behalf of a class of shareholders, for injuries done to them in their individual capacities. <u>Id</u>. To have standing to sue individually, the shareholder must allege an injury separate and distinct from other shareholders, or a wrong involving a contractual right of the shareholder that exists independently of any right of the corporation. <u>Id</u>. (citing <u>Kramer v. W. Pac. Indus., Inc.</u>, 546 A.2d 348, 351 (Del.1988)).

3

Here, the Second Amended Counterclaim alleges that Banknorth's "conduct in its financial relationship with the Rome Family Corporation and Bernard Rome personally deprived the Romes, as the stockholders of Rome Family Corp. of the financial return to which he [sic] would have personally received from business activity specific to the activity Banknorth, N.A. was financing." Second Amended Counterclaim (doc. # 57, ¶4). The Second Amended Counterclaim specifically states that Banknorth's conduct forced the Debtor into bankruptcy. Id. at ¶3. The Counter-Plaintiffs specifically allege Banknorth committed a breach of contract by violating agreements between Banknorth, the Debtor and the Defendant; breached the covenant of good faith and fair dealing as to the Defendant with respect to the Reserve Account; breached its fiduciary duty as to the Debtor and the Defendant; committed fraud by failing to release the balance of the Reserve Account to the Defendant; and converted the balance of the Reserve Account.

Upon review of the nature of the wrongs alleged in the body of the Second Amended Counterclaim and applicable case law, the Court finds the asserted claims are patently derivative. Bovee v. Lyndonville Sav. Bank & Trust, 174 Vt. at 509, citing Strougo v. Bassini, 282 F.3d 162, 174 (2d Cir. 2002) (shareholders lack standing to sue directly for loss in share value resulting from mismanagement); Strasenburgh v. Straubmuller, 146 N.J. 527, 683 A.2d 818, 829 (1996) ("Shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations.").

The Court finds that summary judgment is proper as the Statement of Undisputed Facts filed by Banknorth (doc. # 72) sets forth all facts material to the instant issue and that there are no material facts in dispute. The Court further finds that Banknorth is entitled to judgment as a matter of law. Therefore, the Court grants Banknorth's motion for summary judgment. This constitutes the Court's findings of fact and conclusions of law.

May 5, 2006  
Rutland, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge